The next case for argument will be United States v. Madueno. You may proceed. Thank you. May it please the court, counsel, good morning. My name is Harriet Leavitt. I represent Mr. Madueno. I would like to address my arguments this morning to the two issues regarding sufficiency of the evidence, first to sustain the conspiracy conviction and the second to sustain the gun conviction. As to the conspiracy conviction, it is pretty clear from the evidence that Mr. Madueno's connection with this conspiracy is at best tenuous. The only evidence that the government introduced was the fact that when the government agents went to raid this stash house, by surprise, there he was sitting in the kitchen table. The only other evidence connecting him with the co-conspirators was the fact that he had stored cell phone numbers for two of the conspirators and that there were approximately ten phone calls between him and his uncle, Orantes, who was also in the residence, from the day before he was found in this stash house. Well, but there are a few other facts. Number one, he spent 16 hours in the stash house. No, he didn't. Well, that's in the evidence. No. The evidence is that they don't know when he got to that stash house. 16 hours comes from the government's suggestion that we don't know when he got there and there was a period of time when we weren't surveilling the house, so we think he was there for 16 hours. Okay, so it can be surmised. We had nearly 500 pounds of marijuana in this house. The uncle had driven the stuff to the house and when they got to the house, the defendant and the uncle were at the house at the time they arrived. The marijuana was stacked and repacked in the bedroom. The odor was overwhelming and he was sitting there with a small portion of marijuana and near a scale. And wouldn't you expect, Your Honor, if he had been involved in repackaging that marijuana, as the government suggests, that there would have been some of the residue on his clothing or on his hands, just like there was on the kitchen table? That's a good argument. And there wasn't. That's a good argument about facts. But what we're looking at is there sufficient evidence in the light most favorable to the government, given the facts in the case which would suggest this conspiracy. Yes, and the only facts that you have that are most favorable to the government are that he got into that house sometime, we don't know when, and yeah, there was a lot of marijuana in the house. Just because he's in a house with a lot of marijuana doesn't mean that he's part of the conspiracy. There has to be a connection to show that he had some intent with respect to that marijuana. I agree with you, Your Honor. The evidence as to Orantis is overwhelming. He drove the marijuana to the house. He drove with one of the co-defendants to pick up the marijuana. He's making hundreds of telephone calls with the other guys. And I get that from the memorandum decision on the Orantis case, which the government attached to its answering brief. But you don't have any of that with respect to Mr. Mondueño. Well, as I understand the law, we can infer agreement from facts and from other circumstantial evidence, correct? Yes, you can infer. It need not only be a slight connection in order to support knowledge or one establishing a conspiracy. You are correct as far as the standard of review, Your Honor. However, what the government is asking this court to do and what the government asked the jury to do is not to infer logical conclusions. The government asks this court to speculate. Speculate on when did he get to that house. They were conducting almost constant surveillance. They don't know how he got there. They don't know when he got there. So they're asking you to assume that he got there 16 hours earlier, which is the longest possible time that you could assume. There's no basis for that assumption. If we take away the 16 hours, then you say there is not sufficient evidence? I do. And there are nearly 500 pounds of marijuana. He had close contact with the co-conspirator. Ten phone calls between the time period and all of the rest of the facts that I suggested previously. Let's keep in mind that co-conspirator with whom he had close contact is his uncle. There are ten phone calls over a period of six hours. They are on cell phones. We don't know how long they lasted. We don't know whether they were in close connection with one another. We don't know what was said. There's also a phone call from the defendant and Rosas. Right. And that's it. Interestingly, with these cell phones, Your Honor, the government's expert witness testifies that it's very common now among drug dealers to have prepaid cell phones. Who had the prepaid cell phones? The three others. Rosas, Lopez, and Orantes. Not Mr. Madueño. So there isn't a sufficient connection between him. If you're in a house with 500 pounds of marijuana, yeah, the smell's going to be overwhelming, but that doesn't mean that he adopted the intent to be part of this conspiracy. It doesn't mean that he helped rewrap the marijuana. It doesn't mean that he was guarding it. It means he was there, and that's all it means. There is even less evidence to sustain the conviction for the gun charge. Here we have no fingerprints. We have no statements. We have no indication of when, where, or how that gun got there. We have other people who had access to the house. We have Orantes who answers the door, and the gun is right near the door underneath a pile of toys, and another panel of this court found that there wasn't sufficient evidence to find him guilty of to find Orantes guilty of that charge. That, however, is a decision which is unprecedented to us, is it not? Well, I don't – I think it's for purposes of persuasion and not necessarily for precedent, but I think that this court can take notice of what its colleagues is finding and can consider that. And there – the point is – Well, it was based on Ruiz, wasn't it? Yes, it is, and I think Ruiz is completely applicable here. There's nothing to suggest that Mr. Madueño had any connection with this gun. Absolutely nothing. He's in another room of the house. He's within two steps of the gun, according to the testimony, correct? I don't know where they get that from. He's in the living room. The living room is not two steps away from the corner of – How big people's steps are. We can only take the evidence as we read it. And I think that you can take that evidence with a grain of salt. I recognize that the house is not a big house. Nevertheless, he's in a different room, and the gun is under a pile of toys in a corner of the living room, fairly close to the front door. Maybe Orantes was within a few steps,  Mr. Madueño was within a couple of steps of that gun. When Judge Rawlinson wrote Ruiz, it was interesting as to the things that she wrote which were important there. She said they have to prove that the defendants had possession, and she goes through a set of characteristics. In that particular suggestion, she says the fact that the defendants had access to the residence was not enough. Well, those particular defendants were found on the outside of the house. These defendants were in the house. No fingerprint evidence connected. We have the same. No witnesses testified they observed them carrying. We have the same. Defendants did not own the residence. Well, in this instance, we find that these defendants didn't own it, but they just as well have owned it because the lady who had the residence suggests that there was no gun there and no marijuana there when she was there, but after having given it to them, then there is. So here we are. We have a different situation here than we have in Ruiz. Not that much different. First of all, Orantes was there at the residence the day before it gets raided. Mr. Madueño was not. Orantes is out in the front yard raking leaves or whatever he's doing out there, doing a little bit of yard work, so he's exercising a little bit of control over it, but it was Rosas who contracted with the tenant of the house, Melina Arredondo, to let him use this house for a few days. It seems like this case, we have a new case out of the Ninth Circuit, I think it's Nevels or something like that, where the guy is drunk and the gun is leaning up against him and the panel determined that there was not sufficient evidence to find possession in furtherance. And then we have Ruiz where the people are outside. We now have the drunk guy, but part of the problem is that he's drunk, so the question is, does he even know that he has a gun lying against him? And then we have this person who's not drunk and has a gun in proximity, but it's not lying in his lap. In other words, we're sort of on the spectrum, it seems to me, of these cases. Yes. You know, where do we cut the line? Yes, Your Honor, and in fact, in this case, the gun is under a pile of toys and the agents don't find the gun until after they've executed a search warrant. So you have Mr. Madueno who shows up at this house, we know not when, sitting at the kitchen table and we don't know whether he even knows that there is a gun under the pile of toys. So I think that if the evidence was insufficient as to a rant is on possession of this gun, it is surely how much more so insufficient as to Mr. Madueno. Thank you. Good morning. May it please the Court. My name is Laura Fashing. I'm an assistant U.S. attorney in Albuquerque, New Mexico, and we have this case because of a conflict that the District of Arizona had. I guess I'll start the same place that my opposing counsel started with the sufficiency of the evidence with respect to the marijuana. Let's make sure that we have the standard correct. As I understand it, there has to be a connection can be slight, but the evidence must be substantial. Is that correct? Well, I'm not sure. I don't know where the substantial comes from. There are several cases that say it. Well, the government has to prove the conspiracy. Number one, it has to prove the conspiracy, and I don't think there's any doubt, but there's a conspiracy here. But to connect the defendant to it, the connection needs only to be slight, but the evidence of that connection must be substantial. Your Honor, you may well be correct. I will say that I have only read those cases to say that the government must show a slight connection of the defendant to the conspiracy. But I think in this case, there's not only substantial evidence showing a connection. The connection is much more than slight. And the evidence was, which we've been through already, much of it the ten phone calls between the defendant and his uncle from the time the marijuana arrived at the house until 4.30 in the afternoon. Then there's one phone call between the defendant and the lead, the sort of head honcho guy, at 4.35 in the afternoon. All three of the co-defendants' and co-conspirators' phone numbers were programmed into the defendant's cell phone, and there was a lot of other cell phone activity between the other co-conspirators during this period of time. He was at the house. The government had the house under the surveillance, continuous surveillance from midnight until 4.30 the next afternoon. And no one entered or left the house except for Lopez and another person who was not this defendant. And so that's where the government says that he was there for at least 16 hours. We didn't see him go in, but we know when he did not go in. And we know that he was there at 4.30 in the afternoon when the police arrived. Exactly what was the timing on the surveillance that was continuous? It was my recollection of the testimony. And I'll tell you, the surveillance testimony is a little bit hard to follow because it jumps. It doesn't go from, you know, the different officers were conducting surveillance at different times. But one officer conducted continuous surveillance from 9 a.m. until 4.30 in the afternoon, and he said he didn't even leave to relieve himself. He used a cup. Right, 9 to 4.30. And then there was testimony, I believe, also that from midnight to 9 there was surveillance and no activity whatsoever was observed at the house. And before that, it was a little bit unclear. They had the house under surveillance some of the time, but it wasn't clear that it was constant surveillance. So then he was found at the house, overwhelming smell of marijuana. He was sitting at the kitchen table, open floor plan. You could sit at the kitchen table and see the front door. So the gun was between him and the front door. There was a small amount of marijuana on the table. There was a scale on a counter nearby. The agent testified that the gun was approximately 10 specific feet from the agent but a few steps. You know, when you take steps, you're going more than a few feet. So he said two to three steps. It was concealed. Is that correct? It was among some toys. It was not concealed. The agents testified it was in plain view. There's a photograph that shows how it was found, and it was among some toys, but the testimony was that it did not look like a toy. It was obviously a real weapon. Was it loaded? Yes, it was loaded, ready for use. Let's see. And there also was, of course, the evidence. Is it feasible for both him and his co-conspirator to have possessed the weapon? Yes, and that was the government's theory, that both possessed the weapon. It was accessible to both? It was accessible to both, and its arrival in the house coincided with the arrival of the marijuana. In other words, the woman who owned the house testified, not owned, she leased it, she testified that the gun was not hers and it was not there the day before the marijuana was there and was not there before she gave access to the house to Rosas. And what do we do with memorandum disposition in Mr. Rance's case? We just ignore that? Yes. Yes, it's important to remember that that was a separate trial, so the evidence was different. It's not binding on the court, and I think in this case the evidence was stronger with respect to both defendants, but unfortunately only Madueno was on trial with this. So you can, I believe, just disregard the memorandum opinion with respect to the co-defendant Orantes. But what evidence is stronger in this case about the gun than was in the Orantes case? It was My worry is that, yeah, we can disregard it, yes, but what evidence do I have that makes this case better than the Orantes case? The Orantes defendant is closer to the gun. He's at the door? He's at the door. He's the one who has transported all this marijuana there. He's the one who is doing all that has to be done to make sure that we got the stuff, and, you know, so even experts will suggest that the transporters and the people who are doing that are the ones who have the weapons. So I guess I'm trying to figure out what evidence do I have in this record which is better against this defendant than it would have been against Orantes. The evidence in this record, it was more clear that the lessor of the apartment or of the house did not own the gun. She was more specific in saying that the gun was not there the day before the marijuana arrived. That was not in the original thing. There was also better testimony about the access of the gun by the defendants, both of them, Orantes and Madueno. He was always sitting at the table, that is, Mr. Madueno, correct? Yes. At the table in the other case? Your Honor, no. I don't believe so, but I do believe there was no specific testimony about how quickly he could have reached the gun, you know, that it was two to three steps. I don't believe that was in the Orantes trial. There was also the expert testimony in this case regarding guns being tools of the trade, for whatever that's worth. There was no expert testimony in the other case? There was expert testimony, but I actually don't believe they went into that. I could be wrong. I don't remember, because that is not the same record, I'm not sure I remember that record as precisely as I remember this one. But the other problem, which was my fault, in the Orantes case was the distinction between Ruiz and Orantes. And in this case, because that court brought my attention to the Ruiz case, you know, we can talk about the distinction between this case and Ruiz, and I think it is important that in Ruiz, both of the defendants, the two defendants in that case were found outside the house, whereas the guns were inside the house. That's an important distinction. And the two defendants … One that the panel was well aware of. I mean, that's what the case says, it's quite clear. Yes. I'm having a little trouble understanding why that changes anything, since the Ruiz case didn't change. Your Honor, you know, their opinion is not very specific or … I mean, it seems that the argument, the one thing you can divine from that disposition, is sort of the same argument that's made here. The gun is there and it must have belonged to somebody, and the lady, the owner of the house says it wasn't there yesterday. So it must have belonged to somebody, and therefore the only two somebodies at the house were these two somebodies. But it seems that for whatever persuasive value it might have, the Oranis decision says that's not enough. Do you have any other cases we should look at? You know, the one case that I brought your attention to was the Kraus case, and I think the Kraus case is closer. In that case, the Kraus case, the defendant owned the house, and that is what showed the possession. And I understand in this case it's different, but the possessor of the house specifically said she did not own the gun and that its arrival coincided with the arrival of the marijuana. So whoever owned the marijuana or possessed the marijuana, I think there's no question these defendants possessed the marijuana. They possessed the gun as well. So thank you. My time is up. Thank you. Do you need any time for rebuttal or do you want to rest? All right. You have one minute. Thank you. Your Honors, I would ask the Court to keep in mind that I did not try either case. Apparently Ms. Fashing did, and she's raising things about the Orantis case that I don't have access to. What we do have access to is the testimony at Mr. Maduena's trial, and I'll refer the Court to excerpts of the record, pages 45 to 46, 82 to 83, and 104, which says that after Mr. Orantis and Mr. Maduena were removed from the residence by agents, they searched, and at that time they found a gun partially hidden among a group of toys. So it wasn't just in plain view out there, and there is no evidence that to Mr. Maduena it was readily accessible or that he even knew about it. I think that the Court does need to consider what the other panel did in the Orantis case, especially when they said there was even less evidence as to Mr. Maduena that he possessed this gun. And I don't see how this Court can uphold the gun conviction as to Mr. Maduena. Thank you. Thank you both for the argument this morning. The case just argued, United States v. Maduena, is submitted.
judges: Fletcher, McKeown, Smith